HEARD NOVEMBER TERM, 1877.

## ROBERTS *vs.* JOHNS.

In an action by the administrator of a distributee of an intestate against the administrator of such intestate, a distributee of the distributee is not a proper party plaintiff, the whole interest being represented by the administrator of the distributee.

An action lies in the Court of Common Pleas by an administrator of a distributee of an intestate against the administrator of such intestate and another distributee to set aside for fraud an *ex parte* decree of the Judge of Probate discharging the administrator of such intestate from liability to account and praying an account against such administrator and a judgment against the defendants as for a personal liability on their part.

BEFORE COOKE, J., AT OCONEE, FEBRUARY, 1876.

Action by M. Jane Roberts, wife of John Roberts, as administratrix of John B. Johns, deceased, and Lila Johns, by guardian *ad litem*, against James A. Johns as administrator of James Johns, deceased, and Samuel H. Johns.

The complaint alleged and prayed:

1. James Johns, late of the then District of Pickens and State aforesaid, died, about August, 1863, intestate, seized and possessed

of a considerable real and personal estate, and leaving as his only distributees his three living children, Samuel H. Johns, James A. Johns and John B. Johns.

2. On the      day of      , A. D. 1865, James A. Johns applied for and received from W. E. Holcombe, Esq., the Ordinary of the then District of Pickens, letters of administration upon the personal estate of his father, James Johns, deceased, and possessed himself fully of the same.

3. On the      day of      , 1864, John B. Johns died intestate, leaving as his heirs-at-law his widow, M. Jane Johns, and one infant daughter, Lila B. Johns.

4. On the      day of      , A. D. 1865, M. Jane Johns applied for and received from W. E. Holcombe, Esq., the Ordinary of the then District of Pickens, letters of administration on the personal estate of John B. Johns, deceased.

5. On the      day of February, A. D. 1865, James A. Johns, as administrator aforesaid, sold, under the order of the then Court of Ordinary, the personal estate of the said James Johns, upon a credit of twelve months, with interest from date, in gold or its equivalent, for the sum of three thousand eight hundred and sixty-two dollars and twenty-nine cents, of which two thousand six hundred and sixty-five dollars was for negro slaves,—the administrator himself purchasing slaves to the value of thirteen hundred and sixty-five dollars.

6. On the      day of      , A. D. 186 , the plaintiff, then M. Jane Johns, intermarried with one John Roberts.

7. The administrator, James Johns, made three returns: The first in July, 1866, in which he charged himself with the sale bill and acknowledged himself indebted in the sum of three thousand eight hundred and eighty-three dollars and nine cents; second, in 1868, in which he acknowledged himself indebted in the sum of three thousand eight hundred and seventy-six dollars and thirteen cents; third, in 1869, in which he acknowledged an additional indebtedness of three hundred and forty-seven dollars and thirteen cents—making his net indebtedness to the estate in 1869, by his own showing, the sum of four thousand two hundred and twenty-three dollars and twenty-six cents.

8. Yet, on March the 7th, 1870, the administrator filed another paper, which he called his final return, in which, ignoring his own returns, the estate in his hands is summarily reduced to the sum of

seven hundred and sixty-nine dollars and twenty-six cents, and, adding an alleged advancement to John B. Johns of one hundred and sixteen dollars, makes the estate eight hundred and eighty-five dollars and twenty-six cents—one-third of which only is set down as the share of each of the distributees, to wit, two hundred and ninety-five dollars and eight cents; and the share due the plaintiffs, as heirs-at-law of John B. Johns, reduced by the said alleged advance, falls to the miserable pittance of one hundred and seventy-nine dollars and eight cents, which on that day the Probate Judge ordered "to be paid to Mrs. Jane Roberts and husband, John Roberts."

9. The pretense for this extraordinary reduction seems to be two-fold: 1st. An arbitration, which was had June 1, 1869, between the administrator and Samuel H. Johns, which ignored all his former returns; and, 2d, some proceeding, by which it is alleged the administrator sold the notes of the estate, including the notes taken for slaves, for a mere trifle, with which only he charged himself, neither of which pretenses can affect the rights of the plaintiffs, who object to the alleged last return and all proceedings had in relation thereto. And the notes had not been appraised doubtful or worthless.

10. As to any alleged compromise with Samuel H. Johns the plaintiffs had no connection and can no way be bound thereby. They state nothing as to that, except it seems to have been a compromise all on one side, when it was believed negro notes would not be collected.

11. In regard to the pretended sale of choses in action, the plaintiffs charge that the whole proceeding was void. It was illegal in its inception and carried out by the administrator in a fraudulent manner—sold by him for his own corrupt advantage. The petition to sell bears no date, but the order of Judge of Probate directing the sale "bears date    November, 1869," when there was no law authorizing such sale. The choses were not appraised doubtful or worthless, but all the "bonds, notes, choses in action belonging. to the estate, were ordered to be sold, for cash, at or near Bachelor's Retreat, on Friday, the 17th instant, after having given at least fifteen days' notice."

12. This extraordinary order was carried out by the administrator in a manner still more extraordinary. No notice as required was given of the time and place. Persons living at Bachelor's Re-

treat did not know of the sale. No one was present at McWhorter's store when the pretended sale was made but the administrator and his friend and kinsman, Sloan Dickson. The administrator went through the form of a sale, and choses nominally worth over seven thousand dollars, and actually worth at least half that sum, were bid off by the administrator and his friend Dickson for the sum of fifty-seven dollars and ninety-two cents. The administrator himself bid off more than half of them, including his own purchases, for slaves, ($1,365,) thirteen hundred and sixty-five dollars, for four dollars and fifty-nine cents. His friend Dickson bid off the remainder. Many of these choses, including some of those bid off by Dickson, the administrator has since collected for his own benefit in full.

13. On the same day on which the extraordinary statement of account was made, to wit, March 7, 1870, before the time allowed for appeal had expired, before the statement could be examined by the parties, one of whom, Lila B. Johns, was an infant, and the other, M. Jane Roberts, a resident of the State of Georgia, and before the pittance ordered to be paid to M. Jane Roberts was paid to her, which in fact never has been paid to her, Richard Lewis, Esq., the then Judge of Probate, undertook to make, and actually did make, an order prematurely and illegally discharging and dismissing the said James A. Johns from further liability as administrator of said estate.

14. The plaintiffs, one of whom was then and still is a minor, and the other a non-resident of this State, were not summoned to said accounting and had no notice of it; and they insist the said discharge is illegal and not binding on them; that the account was *ex parte* and based on fraud and mistake; that the conduct of the administrator throughout was fraudulent and illegal, and especially in regard to the pretended sale of the choses in action, which, by himself or through another, he purchased for his own benefit. And they desire that the said administrator may be required to account properly for the estate of his intestate, James Johns, deceased.

15. That the plaintiff, Lila B. Johns, is an infant, over the age of fourteen years.

16. That a Referee be appointed to state the accounts between the parties.

17. That John S. Verner, Esq., an attorney of this Court, has been appointed, by the Probate Court, guardian *ad litem* of the

infant, Lila B. Johns, to protect her rights and interest in this action.

Wherefore, plaintiff prays—

1. That the said pretended discharge, granted by the Judge of Probate, 7th March, 1870, may be set aside and declared void, as prematurely and illegally granted, and as based upon mistake and fraud.

2. That a Referee be appointed by this Court to state the accounts between the parties hereto.

3. That the conduct of the said James A. Johns, as administrator, as aforesaid, especially in regard to the sale of the choses in action, may be inquired into, that the said pretended sale may be set aside, and the said administrator required to account for the full value of the same.

4. That the said James A. Johns may be required to account for the estate which has or should have come into his hands as administrator of James Johns, deceased, and for his actings and doings generally as such administrator, or for such other and further relief as the circumstances of the case may require; and

5. For the costs of this action.

The defendant, James A. Johns, demurred upon the grounds—

1. That the complaint does not state facts sufficient to constitute a cause of action; and

2. That the Court has no jurisdiction of the subject of the action.

His Honor the Circuit Judge overruled the demurrer, and the defendant appealed.

*Norton*, for appellant.

*McGowan*, contra.

A brief containing the following constitutional and statutory extracts in relation to the jurisdiction of Probate Courts was filed by counsel in the cause:

The following are the existing constitutional and statutory provisions on the subject, viz.:

Constitution, Art. IV, Sec. 1: "The judicial power of the State shall be vested in a Supreme Court, in two Circuit Courts, to wit, a

Court of Common Pleas, having civil jurisdiction, and a Court of General Sessions, with criminal jurisdiction only, in Probate Courts and in Justices of the Peace. The General Assembly may also establish such municipal and other inferior Courts as may be deemed necessary."

Sec. 15: "The Courts of Common Pleas shall have exclusive jurisdiction in all cases of divorce, exclusive original jurisdiction in all civil cases and actions *ex delicto* which shall not be cognizable before Justices of the Peace, and appellate jurisdiction in all such cases as may be provided by law."

Sec. 16: "It (the Court of Common Pleas) shall have jurisdiction in all matters of equity, but the Courts heretofore established for that purpose shall continue as now organized until the first day of January, 1869, for the disposition of causes now pending therein, unless otherwise provided by law."

Sec. 17: "The General Assembly shall provide by law for the preservation of the records of the Courts of Equity, and also for the transfer to the Court of Common Pleas and Probate Courts for final decision of all causes that may remain undetermined."

Sec. 20: "A Court of Probate shall be established in each County, with jurisdiction in all matters testamentary and of administration in business appertaining to minors and the allotment of dower, in cases of idiocy and lunacy, and persons *non compos mentis.*"

Statute 1868, page 10, Sec. 18: "All suits in equity depending in the Courts of Chancery and not finally disposed of and the property and records relating thereto on the first day of January, A. D. 1869, shall be transferred to the Courts of Common Pleas in and for their respective Counties, and shall be entered upon the dockets of said Courts for the stated term thereof next ensuing, and thereupon shall be heard, tried and determined, with all rights respected and preserved in the same manner as if originally brought there: *Provided,* That no cause shall be transferred to the dockets of the Courts as aforesaid not cognizable therein under the Constitution : *Provided, further,* That all causes depending as aforesaid and the property and records pertaining thereto cognizable under the Constitution in the Courts of Probate shall be transferred to said Courts."

September 21, 1868, Sec. 7 of an Act to define the jurisdiction and regulate the practice of Probate Courts, 14 Stat., 78: "*All proceedings* in relation to the settlement of the estate of any person

deceased *shall* be had in the *Probate Court* of the County in which his will was proved or administration of estate was granted." And Sec. 21 of the same Act: "The Circuit Court shall have appellate jurisdiction of all matters originally within the jurisdiction of the Probate Court."

14 Stat., 263, Sec. 1, March 26, 1869, providing the discharge, Rev. Stat., 189, Sec. 4: "It shall not be lawful for any of the Judges of Probate in this State to grant a final discharge to any executor or executrix, administrator or administratrix, trustee, guardian or committee, without he, she or they first giving public notice in some County newspaper, (if there should be no newspaper published in the County, then in some public journal having the greatest circulation therein,) for the space of at least one month, that on a day certain he, she or they will apply to the Judge of Probate for the County where his, her or their bond is filed for a final discharge: *Provided*, The said publication shall be tri-weekly in the cities of Charleston and Columbia."

May 11, 1878. The opinion of the Court was delivered by

WILLARD, C. J. The complaint is in the nature of a bill by the administratrix of a distributee to charge the administrator of the intestate of such distributee for losses to such distributee occasioned by fraudulent misconduct on the part of the administrator in dealing with the assets of the intestate's estate, and alleges that a decree upon the accounting purporting to be final had been taken *ex parte* in the Probate Court without notice to either of the plaintiffs. The administratrix joins with herself as plaintiff Lila Johns, an infant, one of the distributees of the distributee whose estate she administers, she herself being the other distributee of such estate. The infant, Lila, appears by guardian *ad litem*. The defendants demurred to the complaint for want of equity and to the jurisdiction of the Court. The Circuit Court overruled the demurrer, and the defendants have appealed.

We will first consider the demurrer as affecting the plaintiff Lila Johns. She was clearly an improper party. She was not a distributee of the estate of James Johns, but was entitled only as a distributee of John B. Johns, who was a distributee of the estate of James Johns; consequently her right was properly represented by the plaintiff M. Jane Roberts as administratrix of John B. Johns. It follows that no decree can be demanded by Lila Johns.

One of the grounds of demurrer to the complaint was that it stated no cause of action in favor of the plaintiffs against the defendants. As it regards Lila Johns, the point made by the demurrer was clearly well taken, and as to her the order overruling the demurrer is erroneous and must be set aside and the complaint as to her dismissed. Upon such dismissal the parties must pay their own costs, as it does not appear that the defendants have been subjected to either costs or inconvenience by the misjoinder of her name with that of the administratrix as parties plaintiff.

It remains to consider the demurrer as it regards the administratrix, and, for the purpose of convenience, the complaint will be treated as if brought by her alone. There is no question but that such a bill could have been brought in the Court of Chancery prior to the present Constitution as against proceedings covered by the sanction of an *ex parte* decree of the Ordinary, and the facts here stated, spread out upon the bill and admitted by demurrer or answer, would have entitled the plaintiff to a decree.

Has the Court of Probate exclusive jurisdiction, under the Constitution, of the matter of the controversy presented by the present complaint?

It may be conceded that the plaintiff might have applied to the Probate Court to set aside an *ex parte* decree, and have required the matter of the accounting of the administrator to have proceeded upon proofs and allegations to which all parties in interest, creditors or distributees, might have participated.

The effect of such a proceeding would have been to open the accounting for the benefit of all concerned, whether creditors or distributees, and to procure a reformation of the accounts and to fix the rights of the several parties in interest under such accounting.

The complaint demands an account as " between the parties," who are the plaintiff, the administratrix of a distributee, the administratrix, and S. H. Johns, charged to have had improper dealings with the administrator, who is also a distributee. What the plaintiff has sought to do is to fix a personal liability on the administrator as it regards the effect upon her rights as administratrix of his alleged fraudulent misconduct.

The plaintiff is not compelled to seek to reform the accounts as a whole, but, leaving them as they stand as affecting all other parties interested in the administration, is at liberty to charge the administrator—on the ground of fraud—with procuring an inequi-

table settlement as to the measure of his liability. It is competent to obtain relief in equity, as against one clothed with authority of a fiduciary character, for any injurious consequence or fraudulent conduct, and procuring *prima facie* evidence of discharge from responsibility under such fiduciary character is an act injurious to those interested in a full and fair accounting.

The fraud of the administrator is the proper foundation of such a jurisdiction, and the decree sought is not necessarily one tending to charge the assets of the estate as such and to subject them to a rule of distribution different from that which formed the basis of the accounting under which the discharge was granted, but may be personal as between the plaintiffs and the administrator, the remedy being based on personal wrong and measured by the injury to the plaintiffs.

There being, then, such a remedy as that which the plaintiff has a right to demand under her complaint, the Court of Common Pleas, invested with full equity powers, has undoubted jurisdiction of it.

The Constitution (Art. IV, § 20,) gives the Probate Court "jurisdiction in all matters testamentary and of administration." Is the entertaining of such an action a " matter of administration "? Clearly not; matters of administration consist in collecting, reducing and holding personal assets, paying debts, making distribution and accounting therefor.

A personal remedy against an administrator for wrong done, by means of which distribution has taken place in a manner injurious to the plaintiffs, is a matter distinct from things done in the course of administration. Whatever is doné in the course of administration necessarily affects all concerned in the results of the administration. The present question affects only the parties to the suit, and as to those it is hereby to be assumed that the plaintiff seeks the benefit of a new accounting in behalf of S. H. Johns, who is charged by her with complicity in the matters alleged.

It is clear that if the plaintiff had sought a remedy in the Probate Court it would necessarily have been of a different character from that which she has a right to claim under the complaint, and consequently there is no ground for holding that the present action is one that should have been brought in another form in the Probate Court.

The appeal must be dismissed as it regards M. J. Roberts.

*McIver*, A. J., and *Haskell*, A. J., concurred.